JOHN S. MCKINLEY, appellant, *vs.* ISABELLA LAMB and others, respondents.

Where the testimony of a witness, upon the probate of a will, is not affirmative in its character—being, in substance, that he did not hear anything said by the testator, at the time the will was signed, although he thinks he would have heard anything that was said, and that he did not hear done, what three disinterested witnesses say was done, viz., the reading of the will, in whole or in part, in the presence of the testator—it is not entitled to the consideration which it would otherwise command.

Although it is a general rule that when there is a conflict of evidence, the decision predicated upon it shall not be disturbed, in the absence of strong grounds therefor, yet where the evidence on the part of the contestants, upon the probate of the will, before the surrogate, as to whether the requisitions of the statute were complied with, on its execution, is decidedly inferior, in quantity, quality and disinterestedness, to that given for the proponents, a decree of the surrogate, refusing to admit the will to probate, should be reversed, and a feigned issue ordered, to try the question whether the will was executed and published by the testator as his last will and testament.

APPEAL from a decree of the surrogate of the county of New York, made on the 4th day of February, 1869, declaring null and void a certain instrument in writing propounded for probate by the appellant, as and for the last will and testament of John McKinley, deceased, and refusing to admit the same to probate. The deceased died on the 27th day of January, 1868, at the city of New York, aged eighty-eight years. At the time of his death he was the owner of considerable property, and left him surviving his nephew, the appellant herein, his niece Isabella Lamb, and his grand-nephew and grand-niece, James D. and Sarah McKinley, who are minors, his only known living heirs at law and next of kin.

*Tomlinson & Brigham*, for the appellant.

I. As to execution of the instrument. 1. The subscription by the testator cannot be questioned, nor the fact that his signature was placed to the paper before those of the subscribing witnesses, and in their presence. 2. It was

also published in substantial compliance with the requirements of the statute. In the presence of the three witnesses, the testator speaks of the instrument as his will—for, in Crawford's presence, first, he asks John S. McKinley to read his will, and asks Crawford what he thinks of it; and he tells Crawford that he has sent for him to witness his will. Again, he asks McMurray, one of the witnesses, to read the will. This was done in the presence of Combs, the third witness, who came in with McMurray; and both came expressly to witness the will. Crawford was also present, having come first, and remained throughout the proceedings. The testator says he will sit up in bed and sign it; that is, the instrument called by him his will, and which he, by that designation, had requested Crawford and McMurray to read. Crawford and McMurray assist each other in holding up the testator in bed for the purpose of signing, and this was done in the presence of Combs, who came in with McMurray. The act of signing followed immediately upon the testator's declaration that he would sit up in bed and sign it. There can be no doubt that the testator was perfectly aware of the character of the instrument in question. He calls it by its proper name; he asks parties to read it; when this has been done, he says he will sign it, and does sign it. Under these circumstances, there could have been no imposition upon the testator; and the witnesses must have been satisfied that the paper to which John McKinley was about to place his signature, was, indeed, his last will and testament, and was so regarded by him. This is a complete publication, within the statute. (*Trustees of Theological Seminary of Auburn* v. *Calhoun,* 25 *N. Y. Rep.* 422. *See note and cases cited. Coffin* v. *Coffin,* 23 *id.* 15.) The fact that the witnesses do not recollect all that occurred—cannot swear that all the formalities required by law were complied with—affords no ground for the rejection of a will, but from all the circumstances of the case, taken in

connection with a full attestation clause, the court or jury may find in favor of due execution. (*Orser* v. *Orser*, 24 *N. Y. Rep.* 51. *Peck* v. *Cary*, 27 *id.* 24. *Jauncey* v. *Thorne*, 2 *Barb. Ch.* 40.) As to the coincidence of the provisions of the will propounded, with the declarations of the testator, see testimony of Chambers. 3. As to attestation. One witness testifies, positively, to signing, as a witness, at the request of the testator. The second witness is not positive whether he signed upon request, or not. The testator may have asked him to do so, but this witness testified that he read the whole of the attestation clause (which was full) before witnessing the will, and that he understood it, and the presumption is that he witnessed upon request. Again; a request to witness need not be made by a testator to all the witnesses in detail. A request to one in the presence of all, is a request to all. (*Coffin* v. *Coffin*, 23 *N. Y. Rep.* 16. *Peck* v. *Cary*, 27 *id.* 25, 26.) Nor is it necessary that the request should be made by the testator himself; it may be made by another, if in the presence of or in concert with the testator. (*Peck* v. *Cary*, *above cited.*) The witnesses signed in the presence of each other.

II. The question of capacity on the part of the testator, is one of fact. The testimony adduced before the surrogate by the proponent, satisfied that officer, and he declined further evidence, and stated that the only question before him related to the execution of the instrument. (*See Gardiner* v. *Gardiner*, 34 *N. Y. Rep.* 155.) The competency of a testator must be considered with reference to the time of execution. Here, neither the mind nor the memory of the testator was shown to be infirm; on the contrary, the testimony largely preponderates in favor of the shrewd judgment and general knowledge of the testator, and of his complete apprehension of all that was transpiring about him. (*Stevens* v. *Van Cleve*, 4 *Wash.* 262. *Newton* v. *Carberry*, 5 *Cranch*, 632.)

McKinley *v.* Lamb.

III. There is nothing in the evidence going to show undue influence brought to bear upon the testator; but, on the contrary, the various relatives had free and equal access to him, at all times, and his mind and will operated with entire freedom and clearness in determining the various provisions of the instrument. There is no evidence of any influence brought to bear upon the testator in favor of any particular person or persons, or of deception practiced upon him. (*Gardiner* v. *Gardiner*, 34 *N. Y. Rep.* 155. *Redfield on Wills*, 524.) The instrument in question shows that neither the testator's mind or memory was affected by age. Provision is made for those absent as well as present, without mistake of name; and property is specially designated as charged with certain burdens. (*Pilling* v. *Pilling*, 45 *Barb.* 86. *Delafield* v. *Parish*, 25 *N. Y. Rep.* 23, 29, 97, *and cases cited.*)

IV. The fact that the draftsman of the will was a legatee thereunder, is suspicious only in connection with circumstances indicating fraud or undue influence; the contestants in this case have failed to establish either; and the surrogate has, in effect, so decided. (*Coffin* v. *Coffin*, 23 *N. Y. Rep.* 10.)

V. The decree of the surrogate should be reversed, with judgment that the will in question stand as a valid instrument, and that the surrogate of the county of New York admit the same to probate, enter it on record, and issue letters testamentary thereon. (*Coffin* v. *Coffin*, 23 *N. Y. Rep.* 9. *Pilling* v. *Pilling*, 45 *Barb.* 86, 94.)

*E. H. Anderson*, guardian ad litem, for infant respondents, James D. McKinley and Sarah McKinley.

I. There is no evidence that the statutory requirements have been properly complied with, and a compliance *must be affirmatively* shown. (26 *Wend.* 325. 8 *Paige*, 488. 10 *id.* 85. 1 *Denio*, 33. 1 *Barb.* 526. 2 *id.* 200. 11 *N. Y. Rep.* 220. 15 *Barb.* 304. 16 *id.* 198. 22 *id.* 670. 2 *Bradf.*

McKinley *v.* Lamb.

163.   4 *Sandf.* 10.   6 *N. Y. Rep.* 120.   19 *Barb.* 448.   3 *Bradf.* 322.   49 *Barb.* 276.   25 *N. Y. Rep.* 10.   39 *id.* 153.)

II. Whenever circumstances have been shown from which the question of capacity or soundness of mind appears to be doubtful, in all such cases the burden of proving full testamentary capacity, and the absence of all undue influence, and the thorough and proper execution of the alleged testamentary paper, is thrown upon the party propounding it. And it is a well settled rule of law, that in all cases where capacity, either of mind or memory, is in any way doubtful, proof of origin and of instructions as to such paper, is necessary, and evidence of mere formal execution is insufficient. The proponents have given no proof either of origin or of instructions. (*Billinghast* v. *Vickars, formerly Leonard,* 1 *Phill.* 199.   *Brogden* v. *Brown,* 2 *Addams,* 441.   5 *N. Y. Sur. Rep.* 238.   4 *id.* 311.   3 *id.* 35.   17 *Barb.* 236.   30 *id.* 134.   10 *Paige,* 91.   26 *Wend.* 331. *N. Y. Rep.* 559.)

III. The recent decision in the Court of Appeals, in *Jackson* v. *Jackson,* (39 *N. Y. Rep.* 153,) that the unreasonable or unjust character of a will is not *alone* sufficient to establish an allegation that the will was executed under undue influence, implies that this is *one* of a number of facts which will tend to establish such an allegation. 1. This alleged will was unreasonable in leaving property to one whom the deceased had repeatedly declared to be a madman. 2. The alleged will was unreasonable in not providing for relations who were needy half orphans, with a widowed mother to support, and who had claims upon the bounty of the deceased. 3. The alleged will was unreasonable in cutting off those who were the nearest relatives of deceased, his immediate companions in life, and who had watched and tended and soothed him in his old age, up to the very hour of his death. In forming an opinion of the alleged testator's mind, or of the undue influence that may have been brought to bear upon it, it is

proper to take into consideration the reasonableness of the will in reference to the amount of his property, and the situation of his relatives. (*Raworth* v. *Mariott*, 1 *Myln. & R.* 634. *Baker* v. *Batt*, 2 *Moore, P. C. C.* 317. *Clarke* v. *Fisher*, 1 *Paige*, 171. *Vreeland* v. *McClelland*, 1 *Bradf.* 394. *Redfield on Law of Wills*, part 1, *p.* 121.)

IV. When doubt has been cast upon the testamentary capacity of deceased, less proof of undue influence is necessary on the part of contestants. Where the competency is doubtful or of low grade, the instrument will be rejected, unless the fairness of the transaction and the free and unrestrained volition of the alleged testator be fully established. There is a total absence of proof that in reference to this will there existed spontaneity or even volition. The proof is to the contrary. (*Swinburne on Wills*, part 2, § 25. 2 *Comst.* 498. 26 *Wend.* 255. 2 *Bradf.* 188. 3 *id.* 481. 2 *id.* 133. 25 *N. Y. Rep.* 1. 35 *id.* 559.)

V. The alleged will conflicts with previously expressed intentions, both affirmative and negative, on the part of the deceased; it is in the handwriting of the person therein mentioned as " sole executor and legatee," *qui se scripsit heredem*, and whom the deceased had repeatedly declared should never receive or enjoy his property. No proofs of origin or of instructions have been given, and under the circumstances, undue influence is a proper conclusion at law and in fact. It is a suspicious instrument, and the suspicions so cast upon it have not been removed by any evidence on the part of proponents. (*Delafield* v. *Parish*, 25 *N. Y. Rep.* 1. *Evans* v. *Knight*, 1 *Addams*, 237. *Harwood* v. *Baker*, 3 *Moore P. C.* 282. *Mynn* v. *Robinson*, 2 *Hagg.* 179. *Jones* v. *Goodrich*, 5 *Moore P. C. C. Middleton* v. *Forbes*, 1 *Hagg.* 395. *Swinburne on Wills*, part 2, § 25. *Redfield on Laws of Wills*, part 2, *pp.* 514, 515. *Crispell* v. *Dubois*, 4 *Barb.* 393. *Newhouse* v. *Godwin*, 17 *id.* 236. *Edmunds* v. *Lewer*, 11 *Jur. N. S.* 911. 11 *Abb. Pr.* 214.)

*Cheney & Dixon,* for the respondent Isabella Lamb.

I. The paper propounded was not executed properly and in accordance with the provisions of the statute regulating and prescribing the formalities necessary to the due execution of a last will and testament. Before pointing out the defects in the manner of execution, we wish to premise by saying: 1st. That this is a case that, by all the rules of evidence adopted in our courts, requires the *strictest* and *most invulnerable* proof. (*a.*) Because it was made *in extremis.* (*Newhouse* v. *Godwin,* 17 *Barb.* 236.) The deceased was eighty-eight years old, very feeble, on his dying bed, (the paper being signed only three days before his death,) and suffering from an injury to his brain, caused by a blow received upon his head. (*b.*) Because the case is not free from circumstances indicating undue influence. (*Newhouse* v. *Godwin, supra. Van Pelt* v. *Van Pelt,* 30 *Barb.* 134.) It appears by the testimony, that for the two days preceding the signing of the paper, the appellant (who drew up the paper and made himself almost the sole beneficiary thereunder) was closeted alone with the deceased; that the deceased was using intoxicating stimulants during that time; that the appellant came to the house with the avowed intention of making the old man execute a will under his direction; and the result, after two days contest, was the alleged will of the deceased, giving nearly all his property to the appellant, for whom he often expressed contempt and ridicule, and cutting off those for whom he had an affection, and to whom he had often expressed his intention of leaving his property—the fact that the will is not in harmony with the previous dispositions, affections and declarations of deceased, being always received as evidence of undue influence. (*O'Neil* v. *Murray,* 4 *Bradf.* 311. *Waterman* v. *Whitney,* 1 *Kern.* 157.) 2d. The party offering the will for probate must *affirmatively* prove the concurrence of all the essential acts. It is not necessary for the contestants to show a want of compliance. (*Chaffee* v. *Baptist Missionary*

*Con.,* 10 *Paige,* 85. *Lewis* v. *Lewis,* 1 *Kern.* 222.) Coming now to the question of the due execution of the paper as a last will and testament, we say: 1st. That the paper writing propounded was not *declared* by the deceased to be his last will and testament, which is an essential formality. (5 *R. S. part* 2, *ch.* 6, *tit.* 1, *art.* 3, § 35, *Edm. ed.*) The courts of this State hold that the *declaration* must be a positive communication *to* the witness, indicating that the testator intended to give effect to the paper as his will. (*Burritt* v. *Silliman,* 16 *Barb.* 198. *Remsen* v. *Brinckerhoff,* 26 *Wend.* 325.) And that the testator must *personally* make it known *to* the witnesses by express words or signs that can leave no doubt in their minds. (*Burritt* v. *Silliman,* 16 *Barb.* 198. *Ex parte Beers,* 2 *Bradf.* 164. *Wilson* v. *Hetterick, Id.* 427. *Abbey* v. *Christy,* 49 *Barb.* 276. *Lewis* v. *Lewis,* 1 *Kern.* 220, 222.) " It must be declared by, the testator to be his last will and testament, by some assertion or some clear assent in words or signs, and the declaration must be *unequivocal.*" (*Lewis* v. *Lewis,* 1 *Kern.* 226.) "It will not suffice that the witnesses have elsewhere learned that the document which they are called to attest is a will, or that they infer from the occasion that such is its character." (*Lewis* v. *Lewis,* 1 *Kern.* 226.) The fact must in some manner be declared by the testator, in their presence, that they may not only know the fact, but *know it from him*; and the testator must know that the witnesses know the testamentary character of the act, and *vice versa;* and from some act contemporary with the execution. (*Lewis* v. *Lewis,* 13 *Barb.* 17. 1 *Kern.* 222. *Hunt* v. *Mootrie,* 3 *Bradf.* 322. *Wilson* v. *Hetterick,* 2 *id.* 431. *Dayton on Sur.* 84, 85.) "And the testator must convey *positive* and *unequivocal* information to the witnesses, of the nature of the act, and that it is a will." (*Dayton on Sur.* 86, 87. *Ex parte Beers,* 2 *Bradf.* 164.) Applying these rules to the present case, it appears affirmatively that not a single one was complied with.

(After reviewing the testimony.)

The preceding testimony is all that is offered by the proponents; and not only does it entirely fail to show affirmatively, that a declaration of the paper propounded was made by the deceased, as required, but, on the contrary, it does clearly show, that no such declaration was made. And when we add to this the testimony of James D. McKinley, who testifies that the deceased " did not say anything about the will," it can leave no possible doubt that the deceased failed to make any declaration of the alleged will as required by the statute, and it becomes an established fact, beyond all cavil, that no declaration was made. 2d. The witnesses were not requested by deceased to sign their names as witnesses, as required by law. (5 *R. S., part* 2, *ch.* 6, *title* 1, *art.* 3, § 35, *Edm. ed.*) It appears by the testimony of all the witnesses, that the deceased did not request any of them to act as witness.

(After reviewing the testimony upon this point.)

The above is the testimony on behalf of the proponent, to show that the witnesses were requested to attest the execution of the alleged will, and subscribe thereto as witnesses. But it must be apparent that this testimony not only entirely fails to show a request by the deceased as required by the statute, but on the contrary, positively shows that no such request was made. There is, besides this, the positive testimony of James D. McKinley, that the deceased said nothing concerning the alleged will, and therefore, that no request of any kind was made to the subscribing witnesses to act as such, by the deceased. There can, therefore, be no doubt that the deceased failed to make the request to the witnesses, as required by the statute, and that the only request made to the witnesses was that which they received from John S. McKinley, the person named as executor and sole legatee, in the paper propounded, and that, too, a request not even made in the presence of, or with the consent of the deceased, but at the

McKinley *v.* Lamb.

house of the witness when they were called. This is no request at all.' (*Burritt* v. *Silliman*, 16 *Barb.* 198.) If it shall be maintained by the proponents that the reading of the alleged will in the same room with the deceased was a sufficient compliance with the statute, then we claim on behalf of the contestants, (*a.*) That it should appear that the deceased *heard* it read and clearly assented to it, and accepted it as his will and testament; but the proponent fails to show either, and does not offer any testimony on these points, leaving us to the inevitable conclusion that if the alleged will was read the deceased did not have any knowledge of its character, or assent in any way to its provisions. That he was a dying old man, too weak and feeble to comprehend any of the matters transpiring, and we claim, (*b.*) That the reading of the paper, to bring it at all within even the most liberal idea of substantial compliance with the statute, should have been made in the presence of the deceased and *all* the witnesses. It, however, appears positively from the testimony of the proponent that the paper was read, if at all, only in the presence of the witness Crawford, and before the witnesses Combs and McMurray came in at all. Crawford says: "In the meantime (that is, while McMurray and Combs were out, and, as he thought, had gone for their supper,) he requested his nephew to read the will." Mr. Combs says: "When I went in there I saw Mr. Crawford there, and I believe John S. Mckinley and James McKinley." And Crawford further says: "I think I was there first, before the other subscribing witnesses were there." And, therefore, if it is claimed by the proponent that the alleged will was read in presence of the witness Crawford, still that does not make the execution good, even if all the other requirements had been performed in presence of McMurray and Combs, for the last named would be witnesses only of part of the ceremonies of the execution, and would not be proper attesting witnesses, even though they sign

their names as such. (*Tyler* v. *Mapes*, 19 *Barb.* 448.) 3d. The manner of execution of the paper propounded does not come within the rule laid down by the Court of Appeals, viz., " That it must appear that the paper was signed by the deceased before being signed by the attesting witness." (*Jackson* v. *Jackson*, 39 *N. Y. Rep.* 153.) There is not a syllable of testimony to show compliance with this requirement, in the present case; and as the *onus probandi* rests with proponents, probate would *properly* be denied upon this ground· alone. 4th. The declaration should be made by the testator *after* the signing by the deceased;. " he shall declare the instrument *so subscribed,*" &c. (5 *R. S., Edm. ed., as above. Heyer* v. ——, 1 *Hoff. Ch.* 1–20.) In this 'case it is positively sworn to, that the deceased said nothing *after* he signed the paper. The witness Crawford, says: " He (deceased) did not say anything after he signed it;" and all the other witnesses confirm him. This alone is fatal to the probate. There is another circumstance in this case which strengthens and makes more emphatic and obligatory upon the *proponent,* the rules above laid down, requiring the proponent to establish *clearly* and *affirmatively* a compliançe with the statute of wills in the manner of execution, and that is, that the proponent herein *himself* wrote the paper propounded, and made himself the " *sole legatee* " thereunder. In regard to this circumstance, our courts have wisely said " that the heirs may rest securely on their rights, which can only be divested by *showing* that the will was executed by a *competent* person, with *all* the *formalities,* and the maxim, ' *qui se scripsit hœredem,*' has imposed by law an additional burden on those claiming to establish a will, and the court in such case requires proof of a *clear* and *satisfactory* character. This circumstance calls upon the court to be vigilant and zealous in examining evidence in support of the instrument, and should pronounce against it unless all suspicion is removed. By the civil law such

a will was rendered void, and our Supreme Court has justly doubted whether we have acted wisely in dissenting from these provisions." (*Crispell* v. *Dubois*, 4 *Barb.* 393.) "But they demand strict proof." (*Delafield* v. *Parish*, 25 *N. Y. Rep.* 9. *Dayton* v. *Surrogates*, 178.) And in general our courts lay down as positive rules, that "when a *doubt* exists as to the performance of *any one* requisite, the probate must be refused, though it is probable that the paper expresses the last will and intention of the testator." (*Chaffee* v. *Baptist Miss. Con.*, 10 *Paige*, 85. *Remsen* v. *Brinckerhoff*, 26 *Wend.* 331. *Noding* v. *Alliston*, 2 *Eng. Law and Eq.* 594.) A party seeking to establish a will takes upon himself the burden of proving the concurrence of all the essential acts. He must prove that the testator, at the time of making the subscription, declared the instrument to be his last will and testament, and the proof of one act is not presumptive proof of any other; and the proof demands an accumulation of evidence unknown in any other proceeding, in order to protect age and mental and bodily infirmity. (*Lewis* v. *Lewis*, 13 *Barb.* 17; *and same case on appeal*, 1 *Kern.* 220.) That it is not the duty of the court to strain after probate, nor in any case to grant it where grave doubts remain unremoved, and that unless the conscience of the court be judicially satisfied, the court is bound to pronounce against the probate. (*Delafield* v. *Parish*, 25 *N. Y. Rep.* 9.)

BRADY, J. The conflict of evidence in this case is not such as to warrant the decree of the surrogate. The testimony of James D. McKinley, a relative of the testator, interested in the estate, and who is the only witness in favor of the contestants in reference to the execution and publication of the will, is not affirmative in its character, and is not, therefore, entitled to the consideration which it would otherwise command. It is, substantially, that he did not hear anything said by the testator at the time the will was signed, although he thinks he would have heard

anything that was said, and that he did not hear done, what three witnesses, who are all disinterested, say was done, namely, the reading of the will, in whole or in part, in the presence of the testator. I am aware of the importance of the rule, that when there is a conflict of evidence, the decision predicated of it should not be disturbed, in the absence of strong grounds therefor; but in this case I think the evidence in conflict is so inferior, when compared with that given for the proponent, in quantity, quality and disinterestedness, that the decree of the surrogate should be reversed, and a feigned issue ordered, to try the question whether the will was executed and published by the testator as his last will and testament. I think this the better course; although in the cases of *Peck* v. *Cary*, (27 *N. Y. Rep.* 9,) and the *Matter of Forman's will*, (54 *Barb.* 276,) which present many coincident features attending the execution of the wills considered, the courts passed upon the sufficiency of such execution. I entertain no doubt of the power of the court to direct the issue. (*See Mead* v. *Mead*, 11 *Barb.* 661.)

The capacity of the testator to make a will was not questioned by the surrogate. He arrested further evidence on that subject by the proponent; and we must assume that the only questions passed upon by him were the execution and publication of the will by the testator. The evidence bearing upon the subject of the testator's capacity developed the fact that he said, in conversations which demonstrated his intelligence, had with two persons after his will was made, that he had setled his affairs, and to one of them that he had appointed John S. McKinley, the proponent, to settle them.

For these reasons I think the decree of the surrogate should be reversed, and an issue framed, to be held at the circuit.

Ingraham, P. J., concurred.

McKinley *v.* Lamb.

GEO. G. BARNARD, J., (dissenting.) In this case it is claimed by the respondent that the will in question was not duly executed, pursuant to the statutory requirement. The particulars in which it is claimed that there is a non-compliance, are three :

1st. That the deceased did not declare the paper to be his last will and testament.

2d. That the deceased did not request the witnesses to sign their names as witnesses.

3d. That there is no proof that the paper was signed by the deceased before being signed by the attesting witnesses.

The third objection does not seem to have been taken, or thought of, during the progress of the probate before the surrogate. Under the circumstances, the evidence warrants the conclusion that the deceased signed first. McMurray, who is the first attesting witness, swears that he and Crawford held the deceased up in the bed. He then testifies, " he signed the will, himself, and I signed the will.

Crawford testifies : " He said he would sit up and sign it ; he wanted to do it in bed, and they helped him up, and he done it." Crawford is the second attesting witness.

I think this, together with the presumption arising from the attestation clause, is sufficient to prove that the deceased signed first, in the absence of any contest on that point in the court below.

The evidence shows that the will was read aloud by the witness Crawford, in the testator's presence and at his request, on the occasion of its execution. It was also read by the witness McMurray, on the same occasion, at the testator's request, and in his presence, partly aloud and partly to himself.

" The purpose of requiring a publication being to make sure that the testator is aware that he is making a will, and that he be not imposed on, and procured to sign a will when he supposes it to be some other instrument,"

(25 *N. Y. Rep.* 425,) the reading of this paper by these two witnesses, at the request of the testator, he designating it as his will, is certainly as satisfactory a publication as if he had used the set formula, "I declare and publish this as and for my last will and testament." Indeed to my mind it is more satisfactory.

The witness Crawford testifies: "I was sent for to come as a witness. I had promised him (the deceased) before, that I would be a witness. When I came into the room he said he had sent for me to witness his will." This is clearly a sufficient request to Crawford to act as a witness to the will.

McMurray testifies that he don't remember whether the deceased asked him to sign the will as a witness; but he testifies that he on that occasion read the attestation clause, and knew the contents of it, and that clause states that they signed "at the testator's request." This is some evidence that there was such request; and this is strengthened by the fact that after having been called there for a special purpose, the deceased requested him to read the will, showing him that he knew the object for which the witness had come, assented to it, and desired, as he was to be a witness, that he should know what it was that he was about to witness.

As the statute requires but two witnesses to a will, it is immaterial whether the one in question was published to Combs, the third witness, or whether the deceased requested him to sign it as witness, or not.

If, then, there was no testimony contradicting that of Crawford and McMurray, the decision below would have to be reversed. Is there such evidence?

John Combs, who was present during the whole time that McMurray was, testifies:

"Did the testator say anything? Did you hear Mr. McKinley, the testator, say anything?

No, sir.

Did you hear the will read in his presence?

I only heard a few words read.

Who read the will?

Mr. McMurray read a few words.

Was it in the testator's presence?

Yes."

This witness was one of those who had been requested to come and act as witnesses.

James D. McKinley, the testator's grand-nephew, testifies that he was present in the room from the time the witnesses came in until they went out.

"Just tell me what occurred that night; after the witnesses came there, after Mr. Crawford, Mr. McMurray and Mr. Combs came there, just me tell what occurred?

Nothing occurred. There was nothing much occurred when they came there, but to sign the will. He did not speak anything.

Was anything said by McKinley, the testator?

No, sir.

The old man did not say anything about the will?

No, sir."

Cross-examination.

"You mean to say that you did not hear him say anything?

No, sir; if there was anything said I could have heard it.

Did you see him sign the will?

Yes, sir, I did.

Did you hear McMurray read a portion of the will?

No, sir."

The room was not a large one; the deceased was in bed; and the only persons in the room were the deceased, the three persons who had been called in as witnesses, James D. McKinley, and the executor, John S. McKinley.

Thus there is a conflict of evidence as to whether the requisitions of the statute were complied with. Considering that the witness Crawford could not, on his first

examination, recollect that the deceased requested him to sign as a witness, but only recollected that circumstance after the adjournment of the next day; that there is no direct evidence of a request to McMurray to sign as a witness, said request only being implied from the circumstances; that the deceased was a man of 88, and *in extremis* when the paper was executed; that the paper was drawn by the party chiefly interested under it; and that the surrogate had the witnesses before him, and was thus able to note their appearance, demeanor and manner of testifying, on which, to a very great extent, the degree of credibility to be attached to them depends, the decision of the surrogate, on this conflict of evidence, should not be disturbed. His decree should therefore be affirmed, with costs.

Decree reversed, and a feigned issue ordered.

[NEW YORK GENERAL TERM, April 4, 1870. *Ingraham, Geo. G. Barnard* and *Brady,* Justices.]